AO 91 (Rev. 11/11)  Criminal Complaint (Rev. by USAO on 3/12/20)        ☐ Original   ☐ Duplicate Original

# UNITED STATES DISTRICT COURT

**LODGED**
CLERK, U.S. DISTRICT COURT
04/08/2026
CENTRAL DISTRICT OF CALIFORNIA
BY: _____ GSA _____ DEPTUTY

for the

Central District of California

**FILED**
CLERK, U.S. DISTRICT COURT
04/08/2026
CENTRAL DISTRICT OF CALIFORNIA
BY: _____ DEPUTY

United States of America,

v.

JOSEPH TOEWS,

Defendant

Case No.  2:26-mj-02068-DUTY

## CRIMINAL COMPLAINT BY TELEPHONE
## OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date of January 10, 2023, in the county of Los Angeles in the Central District of California, the

defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2251A(a)(5)(b) | Possession of and Access with Intent to View Child Pornography |
| 18 U.S.C. § 2252A(a)(2)(A) | Receipt of Child Pornography |
| 18 U.S.C. § 2252(a)(2) | Receipt of Visual Depiction of a Minor Engaged in Sexually Explicit Conduct |
| 18 U.S.C. § 2252(a)(4)(B) | Possession of Child Pornography |
| 18 U.S.C. § 2251(a) | Production of Child Pornography |

This criminal complaint is based on these facts:

*Please see attached affidavit.*

☒ Continued on the attached sheet.

_____
*/s/ Leidy Partida*
*Complainant's signature*

Leidy Partida, Special Agent, FBI
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date:        April 8, 2026

_____
*Judge's signature*

City and state:   Los Angeles, California

Hon. Daniel S. Roberts, U.S. Magistrate Judge
*Printed name and title*

AUSA: Clifford D. Mpare

## **AFFIDAVIT**

I, Leidy Partida, being duly sworn, declare and state as follows:

### I.   **INTRODUCTION**

1.   I am a Special Agent ("SA") with the Federal Bureau of Investigation (the "FBI") and have been so employed since January 2020.  I am currently assigned to the Long Beach Resident Agency Violent Crimes Squad.  On this squad, I investigate a variety of criminal cases, including those involving violent crimes, gangs, crimes on high seas, violent crimes against children, extortion, kidnappings for ransom, bank robberies, and narcotics trafficking.  I have received both formal and informal training from the FBI and other institutions regarding computer-related investigations and computer technology.  Based upon my training and experience with the FBI, as well as conversations I have had with other agents and law enforcement officers who specialize in violent crimes, I am knowledgeable in the methods and modes of operation and the language patterns typical of violent crimes, and I am familiar with the methods and patterns utilized in violent crime operations.  Specifically, I know cyber criminals often use coded language when creating social media accounts.  I have participated in cyber-crime investigations where I have deciphered conversations and usernames containing coded language.  I have become familiar with many of the methods of operation used by cyber criminals.  I know cyber criminals often require the use of one or more communication facilities to

communicate and upload content.  Additionally, I know cyber-criminals negotiate times, places, schemes, and manners for uploading, possessing, concealing, manufacturing, and distributing Child Sexual Abuse Material ("CSAM").

## II. **PURPOSE OF AFFIDAVIT**

2.    This affidavit is made in support of a criminal complaint against Joseph TOEWS ("TOEWS") and arrest warrant for TOEWS for violations of 18 U.S.C. § 2251(a), (e) (Production of Child Pornography).  This affidavit is also made in support of a search warrant for TOEWS' place of employment described in Attachment A for the items to be seized described in Attachment B.

3.    The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses.  This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and search warrant and does not purport to set forth all of my knowledge of or investigation into this matter.  Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only, and all dates and times are on or about those indicated.

## III. **PREMISES TO BE SEARCHED**

4.    The premises to be searched is Neuro Wellness Spa Psychiatrists & TMS Therapy, located at 1101 North Sepulveda Boulevard #201, Manhattan Beach, California 90266 (the "SUBJECT

PREMISES") described in Attachment A, which is incorporated herein by reference.

### IV. ITEMS TO BE SEIZED

5.    The items to be seized are the evidence, fruits, and instrumentalities of violations of 18 U.S.C. §§ 2252A(a)(5)(B) (Possession of Child Pornography), 2252A(a)(2) (Receipt or Distribution of Child Pornography), 2252(a)(2) (Receipt or Distribution of Child Pornography ), 2252(a)(4)(B) (Possession of Child Pornography), and 2251(a) (Production of Child Pornography) (the "Target Offenses"), as described in Attachment B, which is incorporated herein by reference.

### V.   SUMMARY OF PROBABLE CAUSE

6.    Based on my review of law enforcement reports, conversations with other law enforcement agents, and my own knowledge of the investigation, I am aware of the following:

7.    The FBI is investigating TOEWS for purchasing child pornography, as well as the production of child pornography.  A search of the SUBJECT PREMISES -- where TOEWS works as a therapist and patients include minor children -- and arrest of TOEWS will help locate CSAM that was purchased or produced and identify TOEWS' victims.

8.    On May 22, 2025, the FBI received notice from Robinhood, an online investment and financial technology service, that a user had likely purchased CSAM through its platform.  The user's account was subscribed to "Joseph Toews"; the account's listed date of birth, social security number,

3

California driver's license number, home address, and phone number matched those of TOEWS.

9. According to Robinhood and blockchain analytical tools, TOEWS' Robinhood account made at least five suspected CSAM purchases between May and September 2024. Specifically, TOEWS' account sent Bitcoin to Bitcoin addresses associated with Darknet CSAM websites called "Child Porno Studio Video Store," "Loliporn Directory," "Pedo Play, CP Video Store and others – Directory," and "CP Videos Bonanza, CP Videos Store - Pedo Videos for Bitcoin." Law enforcement visited these websites and confirmed the presence of CSAM.

10. On December 18, 2025, law enforcement executed a federal search warrant at TOEWS' residence in Playa Vista, California. Law enforcement seized evidence items and transported them to an FBI Evidence Center. I and SA Brittany Radke reviewed the devices and confirmed the presence of CSAM.

## VI. <u>BACKGROUND OF CHILD EXPLOITATION OFFENSES, COMPUTERS, THE INTERNET, AND DEFINITION OF TERMS</u>

11. In this affidavit, the terms "minor," "sexually explicit conduct," "visual depiction," "producing," and "child pornography" are defined as set forth in 18 U.S.C. § 2256. The term "computer" is defined as set forth in 18 U.S.C. § 1030(e)(1).

12. Based upon my training and experience in the investigation of child pornography, and information relayed to me by other law enforcement officers involved in the

4

investigation of child pornography, I know the following information about the use of computers with child pornography:

a. <u>Computers and Child Pornography</u>. Computers and computer technology have revolutionized the way in which child pornography is produced, distributed, and utilized. Child pornographers can now produce both still and moving images directly from a common video camera and can convert these images into computer-readable formats. The use of digital technology has enabled child pornographers to electronically receive, distribute, and possess large numbers of child exploitation images and videos with other Internet users worldwide.

b. <u>File Storage</u>. Computer users can choose their method of storing files: either on a computer's hard drive, an external hard drive, a memory card, a USB thumb drive, a smart phone or other digital media device, etc. (i.e., "locally") or on virtual servers accessible from any digital device with an Internet connection (i.e., "cloud storage"). Computer users frequently transfer files from one location to another, such as from a phone to a computer or from cloud storage to an external hard drive. Computer users also often create "backup" or duplicate copies of their files. In this way, digital child pornography is extremely mobile and such digital files are easily reproduced and transported. For example, with the click of a button, images and videos containing child pornography can be put onto external hard drives small enough to fit onto a keychain. Just as easily, these files can be copied onto compact disks and/or stored on mobile digital devices, such as

5

smart phones and tablets, or printed or otherwise transferred to a physical file.  Furthermore, even if the actual child pornography files are stored on a "cloud," files stored in this manner can only be accessed via a digital device.  Therefore, viewing this child pornography would require a computer, smartphone, tablet, or some other digital device that allows the user to access and view files on the Internet.

c.   Internet.  The term "Internet" is defined as the worldwide network of computers -- a noncommercial, self-governing network devoted mostly to communication and research with hundreds of millions of users worldwide.  The Internet is not an online service and has no real central hub.  It is a collection of tens of thousands of computer networks, online services, and single user components.  In order to access the Internet, an individual computer user must use an access provider, such as a university, employer, or commercial Internet Service Provider ("ISP"), which operates a host computer with direct access to the Internet.  Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

d.   Internet Service Providers.  Individuals and businesses obtain access to the Internet through ISPs.  ISPs provide their customers with access to the Internet using telephone or other telecommunications lines; provide Internet email accounts that allow users to communicate with other Internet users by sending and receiving electronic messages

6

through the ISPs' servers; remotely store electronic files on their customer's behalf; and may provide other services unique to each particular ISP. ISPs maintain records pertaining to the individuals or businesses that have subscriber accounts with them. Those records often include identifying and billing information, account access information in the form of log files, e-mail transaction information, posting information, account application information, and other information both in computer data and written record format.

13. The following are definitions of terms used herein:

i. "Chat," as used herein, refers to any kind of text communication over the Internet that is transmitted in real-time from sender to receiver. Chat messages are generally short to enable other participants to respond quickly and in a format that resembles an oral conversation. This feature distinguishes chatting from other text-based online communications such as Internet forums and email.

ii. "Chat erotica," as used herein, means materials or items that are sexually arousing to persons having a sexual interest in minors but that are not necessarily obscene or do not necessarily depict minors engaging in sexually explicit conduct.

iii. "Child pornography," as defined in 18 U.S.C. § 2256(8), is any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct, where: (a) the

7

production of the visual depiction involved the use of a minor engaged in sexually explicit conduct; (b) the visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from that of a minor engaged in sexually explicit conduct; or (c) the visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaged in sexually explicit conduct.  Child pornography is sometimes abbreviated as "CP."

iv.  "Computer," as used herein, refers to "an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device" and includes smartphones, other mobile phones, and other mobile devices.  See 18 U.S.C. § 1030(e)(1).

v.  "Encryption" is the process of converting data into code in order to prevent unauthorized access to the data.

vi.  "Log files" are records automatically produced by computer programs to document electronic events that occur on computers.  Computer programs can record a wide range of events including remote access, file transfers, logon/logoff times, and system errors.  Logs are often named based on the types of information they contain.  For example, web logs contain specific information about when a website was accessed by remote computers; access logs list specific information about

8

when a computer was accessed from a remote location; and file transfer logs list detailed information concerning files that are remotely transferred.

vii. "Minor," as defined in 18 U.S.C. § 2256(1), refers to any person under the age of eighteen years.

viii.    "Records," "documents," and "materials," as used herein, include all information recorded in any form, visual or aural, and by any means, whether in handmade, photographic, mechanical, electrical, electronic, or magnetic form.

ix.  "Sexually explicit conduct," as defined in 18 U.S.C. § 2256(2), means actual or simulated (a) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the anus, genitals, or pubic area of any person.

x.   A "storage medium" or "storage device" is any physical object upon which computer data can be recorded. Examples include hard disks, RAM, floppy disks, "thumb," "jump," or "flash" drives, CD-ROMs, and other magnetic or optical media.

xi.  "Visual depiction," as defined in 18 U.S.C. § 2256(5), includes undeveloped film and videotape, data stored on computer disc or other electronic means which is capable of conversion into a visual image, and data which is capable of conversion into a visual image that has been transmitted by any means, whether or not stored in a permanent format.

9

## VII.  STATEMENT OF PROBABLE CAUSE

### A.  Robinhood Reports Suspected CSAM Purchases by TOEWS' Account.

14.  Robinhood is a financial technology company based in California that allows users to deposit funds, trade stocks, and exchange cryptocurrencies, including Bitcoin.  On May 22, 2025, Robinhood's investigations team provided the FBI with a referral that one of their users ("TOEWS' Robinhood Account") had likely purchased CSAM through Robinhood's platform between May 2024 and September 2024.

15.  Robinhood provided the subscriber information for TOEWS' Robinhood Account, including the account creation date, TOEWS' first and last name, date of birth, social security number, address (the "Torrance Address"), California driver's license number, e-mail address, phone number (the "Subject Telephone"), and linked bank account number and routing number. I have reviewed that information but am not including it in this affidavit in the spirit of Federal Rule of Criminal Procedure 49.1.

16.  I have reviewed law enforcement databases related to TOEWS, and the information for TOEWS' Robinhood Account is consistent with information associated with TOEWS from those databases.

### B.  The FBI Further Ties Information from TOEWS' Robinhood Account to TOEWS.

17.  As noted above, the subscriber information for TOEWS' Robinhood Account lists the phone number for the Subject

10

Telephone.  According to subscriber records from Verizon, someone with the initials S.T. is listed as the subscriber, but the assigned user is listed as "Joseph Toews."  The subscriber's address is the same as that listed for TOEWS' Robinhood Account, namely, the Torrance Address.

18.  According to law enforcement databases, S.T. is TOEWS' mother; both she and TOEWS appear to have previously resided at the Torrance Address.  TOEWS also identified the Torrance Address as his address to Robinhood, and provided an outdated copy of his California driver's license identifying the Torrance Address to Robinhood.

19.  TOEWS' current California Department of Motor Vehicles ("DMV") records provide a new address (the "Playa Vista Address").  Additional law enforcement database checks indicate TOEWS resides in the Playa Vista Address.

C.    **The IP Address Suspected to Have Been Used to Purchase CSAM through TOEWS' Robinhood Account Is Associated with TOEWS.**

20.  On July 21, 2025, Frontier Security Operations Legal Compliance ("Frontier") generated a subscriber report for the Torrance Address.  Frontier reported the following, as well as an account number, phone number, and e-mail address:

**Customer Name:** [S.T.][1]

**Account Address:** [the Torrance Address]

---

[1] Using brackets, I have replaced some of the information from Frontier in this affidavit in the spirit of Federal Rule of Criminal Procedure 49.1 and to be consistent with identifications made above.

11

**Billing Address**: Same.

**Length of Service**: 10/16/2007 to 6/27/2025.

**Type of Service**: Residential internet.

**IP Address**: The only IP used from 4/24/2024 to 7/15/2025 was: 47.149.147.243.

21. According to Robinhood, multiple IP addresses are associated with TOEWS' Robinhood Account, including 47.149.147.243 (Frontier Communications) and 174.193.133.236 (Verizon Wireless).

22. The above subpoena returns and Robinhood information indicate that one of the IP addresses used to purchase CSAM through TOEWS' Robinhood Account (47.149.147.243) was the same and only IP address used from April 24, 2024, to July 15, 2025, at the Torrance Address, subscribed to by TOEWS' mother. As mentioned above, Robinhood reported that the CSAM purchases were between May 2024 and September 2024.

**D.    The FBI Investigates the Five Suspected CSAM Payments from TOEWS' Robinhood Account.**

23. Based on records provided by Robinhood, TOEWS' Robinhood Account appears to have made at least five payments for CSAM between May 2024 and September 2024.

1.    <u>May 13, 2024 - "Child Porno Studio Video Store"</u>:

24. On May 13, 2024, TOEWS' Robinhood account sent approximately 0.00024512 BTC ($15.00 USD) to Bitcoin address 1KejiiUkfqqTCkZhqVkA94unUG3rxhDRWA (transaction hash b697dd06c09a9c36f6317dca91aff569cb853ff63de2dc84f2d0931cb3ce04ad ). This address is associated with a Darknet CSAM site called

"Child Porno Studio Video Store" per blockchain analytical tools. The FBI obtained the screen captures from the blockchain analytical tools, copied the .onion address,[2] and on June 18, 2025, an FBI agent visited that same .onion site. The agent confirmed the presence of apparent CSAM, and that payment options were still active. The Bitcoin address obtained by the blockchain analytical tool used by the CSAM site to receive payment was 1LwF9zKmMFnbEt5iE8wXKxwf4sPxYcJyQz. Based on blockchain analysis, specifically co-spending, this address (1LwF9zKmMFnbEt5iE8wXKxwf4sPxYcJyQz) is contained in the same wallet as the Bitcoin address TOEWS paid (1KejiiUkfqqTCkZhqVkA94unUG3rxhDRWA).

2.    June 3, 2024 – "Loliporn Directory":

25. On June 3, 2024, Toews' Robinhood account sent approximately 0.00007305 BTC ($4.99) to Bitcoin address 1E8qgRksHiZACGwwXKjQY8auDeySpWRvBW (transaction hash 17c1fb61e5632ac61d39d08a08af9ec53634da026f55aad6fb3ea1f01c9e2a1b). This address is associated with a Darknet CSAM site called "Loliporn Directory" per blockchain analytical tools. The FBI obtained the screen captures from the blockchain analytical tools, copied the .onion address, and on June 18, 2025, an FBI agent visited that same .onion site. The agent confirmed the presence of apparent CSAM, and that payment options were still active. The Bitcoin address used by Loliporn to receive payment

---

[2] Internet users can access Darknet websites using the Tor browser. The domain name ".onion" functions similarly as a ".com" domain name, except that .onion websites are only accessible through Tor.

per the blockchain analytical tools was
1AzFSsszgP3wy9HBPQ7nixNKXp5Cff7Svo.  Based on blockchain
analysis, specifically co-spending, this address
(1AzFSsszgP3wy9HBPQ7nixNKXp5Cff7Svo) is contained in the same
wallet as the Bitcoin address TOEWS paid
(1E8qgRksHiZACGwwXKjQY8auDeySpWRvBW).

3.   June 10, 2024 – "Loliporn Directory"

26.  On June 10, 2024, TOEWS' Robinhood account sent
approximately 0.00012498 BTC ($8.72) to Bitcoin address
1Jzxwj7ztBAjKTyocfRwEf3Y2bfz33LMH3 (transaction hash
33e9fecb47af4649268a0ebb12f265fa36d40648bfac1dd98f5e3072f19c5554
).  This address is associated with a Darknet CSAM site called
"Loliporn Directory" per blockchain analytical tools, and is
contained in the same wallet as noted in the description of
TOEWS' payment to Loliporn on June 3, 2024.  This is based on
blockchain analysis, specifically co-spending.

4.   June 13, 2024 - "Pedo Play, CP Video Store and
others - Directory"

27.  On June 13, 2024, TOEWS' Robinhood account sent
approximately 0.00028735 BTC ($19.42) to Bitcoin address
1JZfD1cgGNXWoD4JFsqkE3SW3395MXz4Gg (transaction hash
a80667d2e0dd804b4252c2c496bbfb34c578e81b15bd3b6fa4211fe4ccc27bdc
).  This address is associated with a Darknet CSAM site called
"Pedo Play, CP Video Store and others - Directory" per
blockchain analytical tools.  The FBI obtained the screen
captures from the blockchain analytical tools, copied the .onion
address, and on June 18, 2025, an FBI agent visited that same

14

.onion site.  The agent confirmed the presence of apparent CSAM, and that payment options were still active.  The Bitcoin address used by Pedo Play, CP Video Store, and others – Directory to receive payment per the blockchain analytical tools was 179CADqKnr2E9zwi1SRJLwpX67tnjtZxeQ.  Based on blockchain analysis, specifically co-spending, this address (179CADqKnr2E9zwi1SRJLwpX67tnjtZxeQ) is contained in the same wallet as the Bitcoin address Toews paid (1JZfD1cgGNXWoD4JFsqkE3SW3395MXz4Gg).

     5.    June 30, 2024 - "CP Videos Bonanza, CP Videos Store - Pedo Videos for Bitcoin"

28.  On June 30, 2024, TOEWS' Robinhood account sent approximately 0.00017558 BTC ($10.69) to Bitcoin address 1FwMuhe7UkzLM9qr6V5ZvVB4A4jV2kitc9 (transaction hash 026a404073a330e2d3a7b7b62e3734f78e14b3b38ed94b850af158c1e861ecc3).  This address is associated with a Darknet CSAM site called "CP Videos Bonanza, CP Videos Store - Pedo Videos for Bitcoin" per blockchain analytical tools.  The FBI obtained the screen captures from the blockchain analytical tools, copied the .onion address, and on June 18, 2025, an FBI agent visited that same .onion.  The agent confirmed the presence of apparent CSAM, and that payment options were still active.  The Bitcoin address used by CP Videos Bonanza, CP Videos Store – Pedo Videos for Bitcoin to receive payment per the blockchain analytical tools was 1PEf7vrNEFj4zS1HKoTce8gWVwELsfpyWD.  Based on blockchain analysis, specifically co-spending, this address (1PEf7vrNEFj4zS1HKoTce8gWVwELsfpyWD) is contained in the same

wallet as the Bitcoin address TOEWS paid

(1FwMuhe7UkzLM9qr6V5ZvVB4A4jV2kitc9).

E.    **TOEWS Works as an Associate Marriage and Family**

**Therapist at the SUBJECT PREMISES.**

29.    I have reviewed TOEWS' employment information that is publicly available online.  LinkedIn, Psychology Today, and Neuro Wellness Spa websites identify TOEWS as an Associate Marriage and Family Therapist (AMFT) working at the Neuro Wellness Spa.  The Neuro Wellness Spa's address in Manhattan Beach is the SUBJECT PREMISES.  As of April 6, 2026, TOEWS' LinkedIn "About" section describes himself as having "a diverse work experience that has allowed me to work with people of all ages . . . ."

30.    On November 4, 2025, a federal search warrant was authorized by the Honorable Brianna Fuller Mircheff of the United States District Court for the Central District of California for a GPS ping on TOEWS' Subject Telephone.  I reviewed the pings and observed the following: TOEWS generally left the Playa Vista Address to travel to his employment, the SUBJECT PREMISES, at approximately 10:00 AM, between Monday through Friday.  TOEWS generally returned to the Playa Vista Address from the SUBJECT PREMISES around 6:00 PM.

31.    On April 2, 2026, I initiated surveillance at the SUBJECT PREMISES.  I observed two suites associated with the SUBJECT PREMISES: Neuro Wellness Spa Suite 201A, and Neuro Wellness Spa Suite 202B.  Both suites are next to each other, and TOEWS may have had access to both suites.  Additionally,

16

there are public restrooms on the first floor.  These restrooms appear to be accessible to the public that visits TOEWS at the SUBJECT PREMISES.

**F.    The FBI Finds CSAM on TOEWS' Digital Devices, Including CSAM He Appears to Have Produced in a Workplace Bathroom.**

32.  On December 18, 2025, FBI SAs of the Long Beach Resident Agency executed search warrants on the TOEWS' person, Playa Vista Address, and vehicle.  FBI SAs seized digital devices and transported them to the Orange County Regional Computer Forensics Laboratory (OCRCFL) for forensic processing.

33.  On February 18, 2026, I received the forensically extracted report of evidence of TOEWS' digital devices.  On or about March 25, 2026, I and SA Radke reviewed the extraction report of evidence of TOEWS' digital devices.  The extraction report contained evidence of numerous videos containing CSAM.  Some of the videos were produced by TOEWS.  Specifically, to produce these videos, TOEWS placed a video camera in what appears to be a public female restroom at his place of employment.  Those videos containing CSAM are described as follows:

a.    <u>VICTIM 1</u>

Title: AVI000CH2.avi

Created Date/Time: 1/10/2023 10:04:47

MD5 Hash: 79ee4f7e5e0ebed85c88c6364be870e0

17

A 30-second video[3] of a prepubescent female with long light-brown curly hair, wearing a purple top with pink sleeves and purple stripes on the sleeves.  In the video, the prepubescent female's buttocks are visible.

      **b.**    **<u>VICTIM 2</u>**

Title: AVI000D2.avi

Created Date/Time: 1/10/2023 12:35:58

MD5 Hash:7f754a6ff38bbf8d4d740935e21b930c

A 30-second video of a prepubescent female with long blonde curly hair, wearing a white sweatshirt.  In the video, the prepubescent female's pubic area and buttocks are both visible.

      **c.**    **<u>VICTIM 3</u>**

Title: AVI000D.avi

Created Date/Time: 1/10/2023 8:43:54

MD5 Hash: 59e2a5364af22e5d5f954fcc72a12c23

A 44-second video of a prepubescent female with wavy blonde hair in a ponytail, wearing a blue dress with butterfly print.  An adult female helps the prepubescent female pull down her leggings and get seated on the toilet.  The prepubescent female's pubic region is briefly visible before her buttocks are visible.

      **d.**    **<u>VICTIM 3</u>**

---

[3] This video has the file identifier MD5: 79ee4f7e5e0ebed85c88c6364be870e0

Title: AVI000O.avi

Created Date/Time:1/10/2023 10:09:24

MD5 Hash: 5b22509def933cc2107bcd8097020035

A 39-second video[4] of the same prepubescent female wearing a light-colored top with a tie front.  The female's buttocks are visible in the video.

Title: AVI000O2.avi

Created Date/Time: 1/10/2023 10:17:36

MD5 Hash: 0cced27a98c7fe6620c1e4609c6c0fd5

A 48-second video[5] of the same prepubescent female wearing the light-colored tie top and now wearing a blue-and-white striped vest.  The female pulls down her pants, and her pubic region is briefly visible before her buttocks are visible.

Title: AVI000O3.avi

Created Date/Time: 1/10/2023 10:18:58

MD5 Hash: eec10ad5ac835a5624a3f65d21d7896f

A 53-second video[6] of the same prepubescent female in the blue-and-white striped vest in which her buttocks are visible when she stands up from the toilet.

e.   **VICTIM 4**

---

[4] This video has the file identifier MD5: 5b22509def933cc2107bcd8097020035
[5] This video has the file identifier MD5: 0cced27a98c7fe6620c1e4609c6c0fd5

[6] This video has the file identifier MD5: eec10ad5ac835a5624a3f65d21d7896f

19

Title: AVI000O4.avi

Created Date/Time: 10:27:21

MD5 Hash: d6d59777d6b36b40454fcfd7fbccb312

A 30-second video[7] of a prepubescent female wearing jeans and a tie-dye t-shirt.  The prepubescent female pulls down her pants, and her buttocks are visible as she sits on the toilet and when she stands up.

### f.   VICTIM 5

Title: AVI000C.avi

Created Date/Time: 1/10/2023 8:19:56

MD5 Hash: 5bedaf299a403c42dcad44fd1ed77ae

A 1-minute-and-26-second video[8] of a prepubescent female with long curly hair wearing a light-colored dress and denim vest.  The female's buttocks are visible.  Part way through the video, the female looks to the right, and her face is visible in profile.  There is audio of an unknown male's voice saying "I'm gonna shut the door, ok?" after the prepubescent female had already lifted her dress, exposing her buttocks to sit on the toilet seat.

### g.   VICTIM 6

Title: AVI000CH.avi

Created Date/Time: 1/10/2023 9:45:03

MD5 Hash: 3b70e70f78252121689931350f05e7bd

---

[7] This video has the file identifier MD5: d6d59777d6b36b40454fcfd7fbccb312

[8] This video has the file identifier MD5: 5bedaf299a403c42dcad44fd1ed77ae

A 54-second video[9] of a prepubescent female with curly brown hair, wearing a sweater.  The female's buttocks are briefly visible as she is seated and stands up from the toilet.

### h.    VICTIM 7

Title: AVI000JB.avi

Created Date/Time: 1/10/2023 11:00:16

MD5 Hash: 36df77fbe7aae73a3051f82c662f1399

A 1-minute-50-second video[10] of a prepubescent female with straight hair in a ponytail, wearing a purple animal print jacket and leggings with rainbow print.  The female's buttocks are briefly visible in the video as she is seated and stands up from the toilet.  After the minor female exits the restroom, the latter half of the video also captures an adult male urinating.

### i.    VICTIM 8

Title: AVI000I.avi

Created Date/Time: 1/10/2023 12:15:57

MD5 Hash: d2b3e893a19bdf5796b9493de55d8590

A 2-minute-and-2-second video[11] of a prepubescent female with long wavy hair, wearing a pink t-shirt and dark pants.

---

[9] This video has the file identifier MD5: 3b70e70f78252121689931350f05e7bd

[10] This video has the file identifier MD5: 36df77fbe7aae73a3051f82c662f1399

[11] This video has the file identifier MD5: d2b3e893a19bdf5796b9493de55d8590

In the video, the female's buttocks are visible as she sits on the toilet, and her pubic area is visible after she stands up and turns around.

**j.**   **VIDEO OF TOEWS SETTING UP THE CAMERA THAT MAY HAVE CAPTURED THE MINOR FEMALE VICTIMS**

Title: AVI000LY.avi

Created Date/Time: 1/10/2023 10:26:01

MD5 Hash: dd04c048a687ca9fb64fcd026b2e7297

A 2-minute-and-30-second video[12] in which TOEWS' face is clearly visible.  The camera appears to be placed above the toilet in a public restroom as the ceramic lid to the toilet is visible, and approximately 23 adult females were also captured on video from a camera in the same position.

**k.**   **MORE CSAM VIDEOS IN THE EXTRACTION REPORT**

*a. Title: Hussyfan_pthc_raygold_babyshivid_Hana.mpg*
*File Path:*
*LawDocuments\Extra\DW\Play\Hussyfan_pthc_raygold_bab*
*yshivid_Hana.mpg*
*MD5 Hash: 6ecea6b6d5e12c7ac2d37f95780fbf85*

A video[13] (the video does not provide its length) of a prepubescent female wearing a purple shirt and no pants, laying on a bed.  The video then shows the prepubescent

---

[12] This video has the file identifier MD5: dd04c048a687ca9fb64fcd026b2e7297

[13] This video has the file identifier MD5: 6ecea6b6d5e12c7ac2d37f95780fbf85

22

female fully nude.  An unknown male engaging in digital vaginal stimulation followed by coitus with the same prepubescent female.

b. Title: 0005KidsClubPthc.mp4

MD5 Hash: a63639ff2d96f6aad5b563e130b52f0e

A 17-minute-and-3-second[14] video where a prepubescent female is observed in bed with an adult female.  The prepubescent female is observed engaging in cunnilingus and analingus with the adult female.  Then an unknown adult male is observed engaging in the following with the prepubescent female: digital vaginal stimulation, digital penetration, coitus, and fellatio.

c. Title: Oea12.mpg

MD5 Hash: ad4f4ccda9c2fd166f03b92bcf085d2b

A 6-minute-and-3-second[15] video of a prepubescent female wearing a red shirt, white heeled boots, and black stockings, manually stimulating an unknown male's erect penis.  Then, she is observed engaging in coitus and fellatio.  The above video is part of a well-known CSAM series.  Additionally, I observed this series being sold on the darknet website TOEWS visited on June 30, 2024, called,

---

[14] This video has the file identifier MD5: a63639ff2d96f6aad5b563e130b52f0e

[15] This video has the file identifier MD5:ad4f4ccda9c2fd166f03b92bcf085d2b

23

"CP Videos Bonanza, CP Videos Store- Pedo Videos for Bitcoin."

        *d. Title: Babyshivid-*

        *Samples_3yo_gets_it_every_way_imaginable_pthc_pedo_babyfuck5m46s.mpg*

        *MD5 Hash: 1b8e2f1c97c9bb1bf88415e4df7edc00*

A 5-minute-and-24-second video[16] appears to be a screen recording of numerous videos. Below are some but not all the videos on this compilation video:

    i.  An adult unknown male is observed sitting down, with a nude female toddler on his lap. The unknown male is observed vaginally stimulating the female toddler. Then, the unknown male unzips his pants and attempts to shove his erect penis inside the female toddler's vagina. The toddler appears in pain and is observed covering her face with her hands.

    ii.  An unknown male is in bed with a nude female toddler. The unknown male is observed engaging in coitus with the toddler.

    iii. An unknown adult male is observed sitting down, with a female toddler on his lap. The female toddler is observed wearing a dress with her vagina exposed. The unknown male is observed vaginally stimulating the female toddler.

    iv.  An unknown adult male is observed engaging in coitus with a female toddler. The adult male is observed ejaculating on the outside of the toddler's vagina.

---

[16] This video has the file identifier MD5: 1b8e2f1c97c9bb1bf88415e4df7edc00

24

v.      An unknown adult male is observed laying on top of a crying female toddler as he ejaculates on her face.

e. Title: DSC_9598.avi

MD5 Hash: dba4b836befa185bc9548dc4e5c899b9

An 8-minute-and-5-second video[17] of an unknown adult male attempting to shove his erect penis inside the mouth of a female toddler.  Then, the unknown adult male shoves his erect penis inside the female toddler's vagina to engage in coitus.

k. Title: beauty-cumshot.mpg

MD5 Hash: 449db8ba3b4fd97440d111c979577c2b

A 6-minute-and-19-second video[18] of female toddler fully nude laying on back on bed and an erect penis of an unknown adult male trying to insert his penis inside the female toddler's vagina.  Then, the unknown adult male engages in fellatio with the female toddler.  Then, the unknown male flips the female toddler on her stomach and attempts to insert his erect penis into her vagina.  Then, he engages in anilingus, attempts to insert his erect penis into her vagina, engages in fellatio, and ejaculates on her vagina and torso.

l. Title: Lolita_Collection_vol_4-h265.mp4

MD5 Hash: f6da15bbe5661caecb3629b678d77c59

---

[17] This video has the file identifier MD5: dba4b836befa185bc9548dc4e5c899b9

[18] This video has the file identifier MD5: 449db8ba3b4fd97440d111c979577c2b

A 52-minute-and-22-second video[19] that displays the phrase "Collection 4" across the screen. The screenshot displays thumbnails of CSAM. Each thumbnail is numbered, 1,2,3,4, respectively. The next screenshot displays the phrase "LOLITA COLLECTION Vol. 4". Then, the video displays a prepubescent female showering nude. The prepubescent female is engaging in digital vaginal stimulation. Then, a prepubescent male joins the same prepubescent female and engages in digital vaginal stimulation. Then, two prepubescent females engage in digital vaginal stimulation. Then, the same prepubescent male and one of the previous prepubescent females engage in the following: digital vaginal penetration, fellatio, cunnilingus, and coitus. Then, the prepubescent male ejaculates on the prepubescent female's exterior vagina and abdomen. Then, the video displays a prepubescent female and a prepubescent male engaging in coitus. It is unknown if they are the same individuals from earlier in the recording.

     *m. Title: I002-Adry.avi*

       *MD5 Hash: 7442af5c4c1d1afac943be89b2805ec4*

A 46-minute-and-6-second video[20] that displays the phrase, "TROPICAL CUTIE" and a prepubescent female dancing on a

---

[19] This video has the file identifier MD5: f6da15bbe5661caecb3629b678d77c59

[20] This video has the file identifier MD5: 7442af5c4c1d1afac943be89b2805ec4

bed, wearing only pink underwear.  The phrase, "ADRY-THE MOVIE" then appears on the screen, after which, the prepubescent female removes her underwear and the video proceeds to display three prepubescent females lying on a bed.  The prepubescent females are displayed kissing and touching each other's bodies, while only wearing underwear.  Then, the video proceeds to the girls engaging in oral sex with an unknown adult male.  Then, the video proceeds to two prepubescent females lying in bed, kissing each other, while an unknown adult male engages in coitus with one of them.  Throughout the video, the same unknown adult male is observed engaging in coitus, fellatio, and cunnilingus vaginal with the prepubescent females.

**G.     TOEWS Places a Surreptitious Camera in a Public Restroom on January 10, 2023.**

34.  I and SA Radke reviewed the forensic extraction of TOEWS' devices.  Specifically, I and SA Radke found surreptitious video recordings of TOEWS' wife in a bedroom and a restroom in their residence.

35.  Additionally, I and SA Radke reviewed 12 surreptitious video recordings displaying TOEWS and prepubescent females in a room at what appeared to be TOEWS' employment at that time. Specifically, some of the videos displayed TOEWS engaging in what appears to be play therapy, during which TOEWS would interact with patients by playing games with them during therapy sessions, with the prepubescent females.  The dates of these 12 surreptitious video recordings range from approximately November

8, 2022, to November 11, 2022.  Due to this review, I and SA Radke believe TOEWS tested a surreptitious camera in his office during therapy sessions involving prepubescent females.

36.  My review showed that then, on January 10, 2023, TOEWS placed a surreptitious camera in what appears to be above a toilet in a public restroom at his place of employment at that time.  It appears TOEWS placed it there, as the ceramic lid to the toilet is visible, and approximately 23 adult females were captured on video from a camera in the same position.  Additionally, 8 prepubescent females were captured on video from a camera in the same position.  Law enforcement database records did not reveal TOEWS' place of employment during this time.  However, his biography on his current employer's public website (i.e., Neuro Wellness Spa) notes that "[h]e has been working in the field since 2019," which predates the videos from this public restroom, suggesting to me that he was working at some therapy office at the time.

## VIII.    TRAINING AND EXPERIENCE ON INDIVIDUALS WITH A SEXUAL INTEREST IN CHILDREN

37.  Based on my training and experience, and the training and experience of other law enforcement officers with whom I have had discussions, I have learned that individuals who view and possess multiple images of child pornography are often individuals who have a sexual interest in children and in images of children, and that there are certain characteristics common to such individuals:

28

a.   Individuals who have a sexual interest in children or images of children may receive sexual gratification, stimulation, and satisfaction from contact with children; or from fantasies they may have viewing children engaged in sexual activity or in sexually suggestive poses, such as in person, in photographs, or in other visual media, or from literature describing such activity.  These individuals often maintain possession of these items for long periods of time and keep their collections in numerous places – in digital devices in their homes, in their cars, in their workplaces, or on their persons.

b.   Individuals who have a sexual interest in children or images of children also may correspond with and/or meet others to share information and materials (including through digital distribution via the Internet); conceal such correspondence as they do their sexually explicit material; and often maintain lists of names, addresses, and telephone numbers of individuals with whom they have been in contact and who share the same interests in child pornography.  These individuals often maintain possession of these items for long periods of time.

38.  Digital child pornography on a digital device is easy to maintain for long periods of time.  Modern digital devices often have extremely large storage capacities.  Furthermore, cheap and readily available storage devices, such as thumb drives, external hard drives, and compact discs make it simple for individuals with a sexual interest in children to download

child pornography from the Internet and save it – simply and securely – so it can be accessed or viewed indefinitely.

39. Furthermore, even if a person deleted any images of child pornography that may have been possessed or distributed, there is still probable cause to believe that there will be evidence of the illegal activities – that is, the possession, receipt, and/or distribution of child pornography – in digital devices at work, at home, or on the person. Based on my training and experience, as well as my conversations with digital forensic experts, I know that remnants of such files can be recovered months or years after they have been deleted from a computer device. Evidence that child pornography files were downloaded and viewed can also be recovered, even after the files themselves have been deleted, using forensic tools. Because remnants of the possession, distribution, and viewing of child pornography is recoverable after long periods of time, searching the SUBJECT PREMISES could lead to evidence of child exploitation offenses.

## VIII.   TRAINING AND EXPERIENCE ON DIGITAL DEVICES[21]

40. Based on my training, experience, and information from those involved in the forensic examination of digital devices, I

------

[21] As used herein, the term "digital device" includes any electronic system or device capable of storing or processing data in digital form, including central processing units; desktop, laptop, notebook, and tablet computers; personal digital assistants; wireless communication devices, such as paging devices, mobile telephones, and smart phones; digital cameras; gaming consoles; peripheral input/output devices, such as keyboards, printers, scanners, monitors, and drives; related

*(footnote cont'd on next page)*

know that the following electronic evidence, inter alia, is often retrievable from digital devices:

a.      Forensic methods may uncover electronic files or remnants of such files months or even years after the files have been downloaded, deleted, or viewed via the Internet.  Normally, when a person deletes a file on a computer, the data contained in the file does not disappear; rather, the data remain on the hard drive until overwritten by new data, which may only occur after a long period of time.  Similarly, files viewed on the Internet are often automatically downloaded into a temporary directory or cache that are only overwritten as they are replaced with more recently downloaded or viewed content and may also be recoverable months or years later.

b.      Digital devices often contain electronic evidence related to a crime, the device's user, or the existence of evidence in other locations, such as, how the device has been used, what it has been used for, who has used it, and who has been responsible for creating or maintaining records, documents, programs, applications, and materials on the device.  That evidence is often stored in logs and other artifacts that are not kept in places where the user stores files, and in places where the user may be unaware of them.  For example, recoverable data can include evidence of deleted or edited files; recently used tasks and processes; online nicknames and passwords in the form of configuration data stored by browser, e-mail, and chat

communications devices, such as modems, routers, cables, and connections; storage media; and security devices.

31

programs; attachment of other devices; times the device was in use; and file creation dates and sequence.

c.   The absence of data on a digital device may be evidence of how the device was used, what it was used for, and who used it.  For example, showing the absence of certain software on a device may be necessary to rebut a claim that the device was being controlled remotely by such software.

d.   Digital device users can also attempt to conceal data by using encryption, steganography, or by using misleading filenames and extensions.  Digital devices may also contain "booby traps" that destroy or alter data if certain procedures are not scrupulously followed.  Law enforcement continuously develops and acquires new methods of decryption, even for devices or data that cannot currently be decrypted.

41.  Based on my training, experience, and information from those involved in the forensic examination of digital devices, I know that it is not always possible to search devices for data during a search of the premises for a number of reasons, including the following:

a.   Digital data are particularly vulnerable to inadvertent or intentional modification or destruction.  Thus, often a controlled environment with specially trained personnel may be necessary to maintain the integrity of and to conduct a complete and accurate analysis of data on digital devices, which may take substantial time, particularly as to the categories of electronic evidence referenced above.  Also, there are now so many types of digital devices and programs that it is difficult

to bring to a search site all of the specialized manuals, equipment, and personnel that may be required.

b.   Digital devices capable of storing multiple gigabytes are now commonplace.  As an example of the amount of data this equates to, one gigabyte can store close to 19,000 average file size (300kb) Word documents, or 614 photos with an average size of 1.5MB.

42.   The search warrant requests authorization to use the biometric unlock features of a device, based on the following, which I know from my training, experience, and review of publicly available materials:

a.   Users may enable a biometric unlock function on some digital devices.  To use this function, a user generally displays a physical feature, such as a fingerprint, face, or eye, and the device will automatically unlock if that physical feature matches one the user has stored on the device.  To unlock a device enabled with a fingerprint unlock function, a user places one or more of the user's fingers on a device's fingerprint scanner for approximately one second.  To unlock a device enabled with a facial, retina, or iris recognition function, the user holds the device in front of the user's face with the user's eyes open for approximately one second.

b.   In some circumstances, a biometric unlock function will not unlock a device even if enabled, such as when a device has been restarted or inactive, has not been unlocked for a certain period of time (often 48 hours or less), or after a certain number of unsuccessful unlock attempts.  Thus, the

33

opportunity to use a biometric unlock function even on an enabled device may exist for only a short time.  I do not know the passcodes of the devices likely to be found in the search.

c.    Thus, the warrant I am applying for would permit law enforcement personnel to, with respect to any device that appears to have a biometric sensor and falls within the scope of the warrant: (1) depress TOEWS' thumb and/or fingers on the device(s); and (2) hold the device(s) in front of the TOEWS' face with his eyes open to activate the facial-, iris-, and/or retina-recognition feature.

43.  Other than what has been described herein, to my knowledge, the United States has not attempted to obtain this data by other means.

## IX.  REQUEST FOR SEALING

44.  It is respectfully requested that this Court issue an order sealing, until further order of the Court, all papers submitted in support of this application, including the application and search warrant affidavit.  I believe that sealing is necessary because the items and information to be seized is relevant to an ongoing investigation into criminal conduct involving minor victims.  Disclosure of the search warrant affidavit at this time would be likely to seriously jeopardize the investigation.  Such disclosure may provide an opportunity to destroy evidence, change patterns of behavior, or allow flight from prosecution.  Further, based upon my training and experience, I have learned that criminals who engage in the Target Offenses often search for criminal affidavits and search

34

warrants via the Internet, and disseminate them to other criminals as they deem appropriate, i.e., post them publicly online through forums.  Premature disclosure of the contents of this affidavit and related documents may have a significant and negative impact on this continuing investigation and may severely jeopardize its effectiveness, including the search of the SUBJECT PREMISES for digital evidence that may be destroyed upon publication of this affidavit.

### X.   CONCLUSION

45.  For all the reasons described above, there is probable cause to believe that TOEWS has committed a violation of 18 U.S.C. § 2251(a), (e) (Production of Child Pornography).

46.  Further, for all the reasons described above, there is probable cause to believe that evidence, fruits, and instrumentalities of violations of the Target Offenses, as described more fully in Attachment B, will be found in a search of the SUBJECT PREMISES described in Attachment A.

Attested to by the applicant in
accordance with the requirements
of Fed. R. Crim. P. 4.1 by
telephone on this 8th day of
 April , 2026.

_____
HON. DANIEL S. ROBERTS
UNITED STATES MAGISTRATE JUDGE

35